

July 31, 2024

**VIA ECF**
The Honorable Zahid N. Quraishi
United States District Judge
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street Room 2020
Trenton, NJ 08608

Re: John Doe v. The Trustees of Princeton University, 3:24-cv-07125-ZNQ-TJB

Dear Judge Quraishi:

My firm and Dillon PLLC represent John Doe in this matter. We write in response to Princeton's letter requesting a pre-motion conference in advance of its anticipated motion to dismiss (ECF No. 9). We do not believe that Princeton's well-trod arguments—which it has previously and unsuccessfully made both to this very Court and to the Third Circuit—should persuade this Court to dismiss this case.

**A.   Background**

Near the end of the summer in 2023, John badmouthed Jane Roe behind her back to a mutual friend whose opinion Jane valued. Compl. ¶114. When word got back to Jane, she got angry and told Princeton that John had assaulted her several months earlier. And she got her "co-dependent" friend, Sarah Smith, *id.* ¶84, to do the same thing. Jane's accusation against John was actually the second such one she had made against someone who had upset her. She previously accused Student X (who did not attend Princeton) of similar conduct; when Student X threatened to sue her for defamation, she told John *in texts he shared with Princeton* that she would "lie about it under oath." She later settled with Student X. *Id.* ¶4.

Jane's and Sarah's stories changed repeatedly and in significant ways. But Princeton's Committee on Discipline, which convicts **98%** of respondents who appear before it, did not care. It consolidated the two complaints—even though they occurred in different places, involved different people, and otherwise lacked factual overlap—and conducted a deeply one-sided investigation. *Id.* ¶¶1, 12. It interviewed Jane and Sarah multiple times, allowing them to refine their stories and respond to other evidence before the hearing; it interviewed John only once. *Id.* ¶12. It interviewed several *female* witnesses expected to support Jane and Sarah, but refused to interview *male* witnesses who would support John. *Id.* And despite both alleged incidents happening in public, the sole eyewitness told the Committee he saw no assault at all. *Id.* ¶2.

Princeton then rushed John to a hearing just days after releasing the final batch of evidence to him. *Id.* ¶¶131-32, 138. It scheduled the hearing at 7:15 p.m. and curtailed questioning because of time. *Id.* ¶185. It refused to hear from Student X, the other student whom Jane had falsely accused of the same kind of thing. *Id.* ¶128. It questioned John and Student 4 far more aggressively than Sarah or any of the complainants' witnesses. *Id.* ¶¶13, 162,

164, 184.  As captured in the picture included in the complaint, one of the panelists fell asleep mid-hearing. *Id.* ¶13.  Jane did not appear. *Id.* ¶7.  Princeton found John responsible just hours later—in a three-sentence rationale—based on the provably false reasoning that Jane and Sarah's stories had been consistent—without even having heard from Jane. *Id.* ¶14.

### B.     Mr. Doe's Contract Claim

John adequately alleges that Princeton breached its contract with him in two ways.  The first is by failing to apply its "clear and convincing evidence" standard to Jane's and Sarah's claims. *Id.* ¶¶233-37.  In *Princeton III*, the Third Circuit reinstated a claim that Princeton breached its promise to apply the even lower "preponderance" standard following allegations that it "disregard[ed] evidence that tended to inculpate Roe and exculpate Doe." *Princeton III*, 30 F. 4th at 347.  John amply pleads that here, alleging in detail how Jane and Sarah dramatically changed their stories, how the only eyewitness to Jane's event saw no assault at all, and how Jane had a history of accusing others (Student X) of the same kind of thing—all of which the COD ignored.  Compl. ¶¶2-6.  Similar allegations sufficed in *Princeton III* to state a claim (with a much lower evidentiary standard); they do so here as well.

John also alleges that Princeton breached its promise to grant an appeal when "[t]he procedures" used to resolve the complaint "have not been fair and reasonable." *Id.* ¶¶238-41.  The Complaint alleges in detail how the COD "failed to pursue relevant testimony, evidenced gender bias" during the investigation and hearing, "treated the parties disparately, refused to call relevant witnesses, refused to allow Mr. Doe to submit relevant text message evidence, and conducted the hearing at an unreasonable hour." *Id.* ¶239.  Princeton offers no argument regarding this breach, likely because New Jersey law requires that the procedures a school uses be "'fundamentally fair.'"  ECF No. 9 at 2 (quoting *Princeton III*, 30 F.4th at 345-46).

### C.     Mr. Doe's Covenant Claim

Princeton's only argument regarding John's claim for breach of the implied covenant of good faith and fair dealing is that his allegations "do not plausibly indicate that the University acted in bad faith" simply because it purportedly engaged in an "extensive investigation" and held a "lengthy hearing."  ECF No. 9 at 3.  Again, this just ignores *Princeton III*.  There, the Third Circuit expressly said—*to Princeton*—that "bad faith" is adequately alleged by pleading that a school "'[s]ubject[ed] [Doe] to a discriminatory disciplinary process,' '[d]isregard[ed] exculpatory evidence for [Doe] and incriminating evidence against [Roe],' 'constru[ed] all discrepancies and inconsistencies in [Roe's] favor,' and 'ignor[ed] evidence corroborative of [Doe's] counter claims.'" *Princeton III*, 30 F.4th at 348 (alterations in original).  John has pled all of that here.  A school cannot fulfill its promise to conduct an investigation (Compl. ¶246), or a hearing (*id.* ¶247) or to provide a rationale (*id.* ¶248) by doing those things in name only, in ways infected by bias and prejudgment and a blatant disregard for exculpatory evidence. *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs*, 182 N.J. 210, 226 (2005) ("[s]ubterfuges and evasions in the performance of a contract violate the covenant of good faith and fair dealing even though the actor believes his conduct to be justified" (quotations omitted)).

### D.     Mr. Doe's Title IX Claim

Courts have repeatedly reminded Princeton that all inferences at this stage must be drawn in *John*'s favor, and the existence of plausible non-discriminatory explanations does not mean

that sex bias is not *also* plausible. *See, e.g.*, *Princeton III*, 30 F.4th at 344 ("anti-male bias" need not be "the only plausible explanation . . . or even the most plausible"); *Doe v. Princeton Univ.*, No. 19-cv-7853, 2023 WL 1778832 (D.N.J. Feb. 6, 2023) (Quraishi, J.) ("anti-male bias is still a plausible explanation [a]nd we must construe the facts in the light most favorable to Doe").

John pleads overwhelming evidence showing sex bias is at least plausible. He pleads a history of gender bias at Princeton (Compl. ¶¶37-75), followed by his disparate treatment compared to the female complainants and the disparate treatment of his male witnesses compared to their female witnesses (*id.* ¶¶13, 162, 164, 184). *Princeton III*, 30 F.4th at 344-45 (history of bias at Princeton, combined with disparate treatment of male respondent and female complainant, sufficed to plead Title IX claim). He also explains how Princeton's rationale was unsupported. Compl. ¶¶195-202; *Doe v. Oberlin Coll.*, 963 F.3d 580, 588 (6th Cir. 2020) ("when the degree of doubt [about an outcome] passes from 'articulable' to grave, the merits of the decision itself, as a matter of common sense, can support an inference of sex bias."). All of this is evidence of gender bias that survives a motion to dismiss.

### E.     Mr. Doe's Gross Negligence Claim

Courts nationwide have held that private schools have a common law duty to use ordinary care when disciplining students apart from any contractual obligations. *See, e.g., Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011) (college "had a duty to administer the Honor Code proceedings in a fair and impartial manner"); *Tsuruta v. Augustana Univ.*, No. 4:16-cv-4107, ECF No. 13 (D.S.D. June 16, 2016) (denying university's motion to dismiss negligence claim); *Doe v. Univ. of the South*, No. 4:09-cv-62, 2011 WL 1258104 at *21 (E.D. Tenn. March 31, 2011) (same). Princeton's only argument why New Jersey would not do so is an unpublished decision in which the plaintiff "fail[ed] to advance any respective argument" supporting his negligence claim. ECF No. 9 at 4 (citing *Donohue v. Capella Univ., LLC*, No. CV 22-5634, 2023 WL 5425503, at *7 (D.N.J. Aug. 22, 2023)). But the "indispensable cornerstone" of duty in New Jersey, as in other states, is "foreseeable risk," and "[u]ltimately, whether a duty exists is a matter of fairness." *Dunphy v. Gregor*, 136 N.J. 99, 108 (1994). It is eminently foreseeable that erroneous discipline poses substantial risks to students and fair to require schools to exercise reasonable care when disciplining them.

### F.     Conclusion

John Doe's claims are adequately pled and should proceed to discovery.

Respectfully submitted,

FORD O'BRIEN LANDY LLP

*/s/ Jamie Hoxie Solano*
Jamie H. Solano, Esq.

*Counsel for John Doe*
