**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOHN DOE**,<br><br>Plaintiff,<br><br>v.<br><br>**THE TRUSTEES OF PRINCETON UNIVERSITY**,<br><br>Defendant. | Civil Action No. 24-7125 (ZNQ) (TJB)<br><br>**OPINION** |

**QURAISHI, District Judge**

      **THIS MATTER** comes before the Court upon a Motion to Dismiss ("Motion", ECF No. 16) filed by Defendant The Trustees of Princeton University ("Defendant"). Defendant filed a brief in support of its Motion. ("Moving Br.", ECF No. 16-1.) Plaintiff John Doe ("Plaintiff") filed an opposition. ("Opp'n Br.", ECF No. 17.) Defendant filed a reply. ("Reply Br.", ECF No. 18.)

      The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1] For the reasons set forth below, the Court will **GRANT** the Motion.

**I.    BACKGROUND**

      This matter arises out of Princeton University's (the "University") investigation and disciplinary sanction of Plaintiff, a male undergraduate student, after two women accused him of

---

[1] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.

1

assault. The University ultimately found Plaintiff in violation of its code of conduct and imposed a two-year suspension. Plaintiff now brings this suit, claiming, among other things, that the University's investigation and decision were rife with gender bias in violation of Title IX of the Education Amendment Act of 1972, 20 U.S.C. §§ 1681–88.

### A.   FACTUAL HISTORY[2]

In September 2023, the University's Office of the Dean of Undergraduate Students received a report that Plaintiff had physically assaulted two women. (Compl. ¶¶ 116–117, ECF No. 1.) The alleged victims were a University student, Sarah, and a non-student, Jane Doe ("Jane"). (*Id.* ¶ 117.)[3] Sarah accused Plaintiff of choking her on March 3, 2023, at an eating club party (*id.* ¶ 115) and Jane accused Plaintiff of choking her on the night of April 1, 2023, while she was visiting Plaintiff at the University (*id.*).

#### 1.   March 3, 2023, Incident

On March 3, 2023, Plaintiff, Sarah, and their mutual friend, referred to as Student 3, attended a party at a University eating club. (*Id.* ¶ 88.) Student 3 had allegedly been harassed at a prior eating club event and Plaintiff therefore asked Sarah to "keep an eye on Student 3." (*Id.*) Plaintiff, in his own words, believed that "Sarah was not doing a good job of keeping an eye on Student 3" and "confronted Sarah in actions he would come to regret," speaking "closely and loudly" with Sarah. (*Id.* ¶ 89.) Three female students walked by and asked Sarah if she was okay. (*Id.*) Sarah later reported that, in addition to yelling at her, Plaintiff choked her. (*Id.* ¶ 115.)

---

[2] For the purposes of considering the Motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).
[3] The Court refers to "Sarah" to be consistent with the Complaint.

2. April 1-2, 2023, Incident

On April 1, 2023, Jane was at the University visiting Plaintiff while she was on spring break. (*Id.* ¶ 93.) That night, Plaintiff, Jane, Sarah, Student 3 (from the March 3 incident), and two other students—Student 4 and Student 5 (Plaintiff's roommate)—were drinking in Plaintiff's room. (*Id.* ¶ 94.) The group, with the exception of Plaintiff's roommate, then left Plaintiff's room and began to walk to an event at an eating club on campus. (*Id.*) As they walked, Plaintiff and Jane "kissed briefly," causing Students 3 and 4 to break from the group. (*Id.* ¶ 95.) Jane and Sarah then kissed, which caused an argument between Plaintiff and Jane. (*Id.* ¶ 96.) As Plaintiff and Jane argued, Sarah "in her drunken state, lay[ed] on the ground." (*Id.* ¶ 97.) Jane later reported to the University that "she had not reciprocated Plaintiff's kiss, and that after she kissed Sarah, [Plaintiff] became upset with her and choked her." (*Id.* ¶ 115.)

Plaintiff alleges that "after some amount of arguing," Jane "suddenly collapsed backwards into [him], then fell to the ground screaming and crying loudly." (*Id.* ¶ 98.) Student 4 witnessed the incident as he was walking back to the group. (*Id.* ¶ 99.) As Sarah and Student 4 rushed to her, Jane started to say, "Z choked me," and "[h]e choked me." (*Id.* ¶ 100.)

Jane confronted Plaintiff about the incident the next day and Plaintiff responded that he had "zero memory of anything like that happening." (*Id.* ¶ 104.) Plaintiff then called his parents, allegedly under duress by Jane, whereby he claimed to have been "trying to pull [Jane] in to talk to her and, like, damaged her windpipe ever so slightly." (*Id.* ¶ 111.)

3. The University's Code of Conduct

As a student, Plaintiff was subject to the University's code of student conduct entitled "Rights, Rules, Responsibilities." ("Code", ECF No. 16-1, Ex. A.)[4] Among other things, the Code

---

[4] Generally, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleading," *Doe v. Princeton Univ.*, 30 F.4d 335, 342 (3d Cir. 2022) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410,

3

lays out the University's investigatory process and disciplinary proceedings for alleged violations of the Code, and notes that the Faculty-Student Committee on Discipline ("Committee") is responsible for its administration. (*Id.* at 50, subsection 2.5.1.) The Code provides that a Dean or University investigator will investigate alleged infractions.[5] (*Id.* at 50–51, subsection 2.5.2.) Following an investigation and a hearing before the Committee, "to find that a student has violated a University Rule, a majority of the voting members present must conclude that the evidence presented constitutes a clear and persuasive case in support of the charges against the student." (*Id.* at 52.) The Committee then determines the proper penalty. (*Id.*) If the Committee finds a student violated the Code, the student has the right to appeal the decision to a three-member "impartial and unbiased" panel. (*Id.*)

    4.    <u>Investigation</u>

On September 26, 2023, a University investigator contacted Plaintiff about the reports. (*Id.* ¶ 116.) On September 29, 2023, the investigator interviewed Plaintiff and informed him of the charges against him. (*Id.* ¶ 117.) Plaintiff submitted a written statement to the investigator as well as a letter from "Student X," a student whom Jane alleged threatened to choke her, accusing Jane of defaming him. (*Id.* ¶ 118.) Thereafter, Deputy Dean of Undergraduate Students Joyce Chen ("Dean Chen") provided Plaintiff with a formal notice of the charges and packets of evidence that had been collected during the University's investigation, including written statements of the

---

1426 (3d Cir. 1997)), but where the document is "integral to or explicitly relied upon in the complaint," it "may be considered without converting the motion to dismiss into one for summary judgment" under Rule 56. *id.* (quoting *Doe v. University of Sciences*, 961 F.3d 203, 208 (3d Cir. 2020)). Because the Code, which Defendant attached excerpts of to its Motion, is cited and relied upon in the Complaint, the Court may consider it.

[5] The Committee is generally responsible for administering the Code, assessing reported violations and assigning any penalties. (Code at 50, subsection 2.5.1.) When charges are raised in connection with an investigation under the University's Title IX sexual harassment and sexual misconduct policies, however, the Title IX coordinator "may direct a Title IX panel to investigate and adjudicate charges normally handled by the [Committee]." (*Id.*) Such a transfer never took place here because Plaintiff was charged with violating the Code's Personal Safety and Alcohol policies, not its Title IX policy. (*See* Moving Br. at 20.)

4

alleged victims and summaries of the witnesses interviewed. (*Id.* ¶ 126.) Dean Chen told Plaintiff "to let her know as soon as possible if he wanted any additional interviews to be conducted based on the information in the packet." (*Id.* ¶ 122.)

The Committee formally charged Plaintiff with two violations of the University's Code. (*Id.* ¶ 123.) First, Plaintiff was charged with a violation of the Code's Personal Safety Policy for his actions on March 3, 2023, and April 1, 2023, when he allegedly choked Sarah and Jane, respectively.[6] (*Id.*) Plaintiff was additionally charged with a violation of the Code's Alcohol Policy for allegedly hosting a "pregame" in his dorm room on the night of April 1, 2023, and serving alcohol to minors.[7] (*Id.*)

In advance of a hearing before the Committee on the alleged charges, Plaintiff asked Dean Chen if he could call Student X as a witness. (*Id.* ¶ 125.) Dean Chen responded that he could not because Student X was not interviewed but suggested that Student X "submit a written statement with any information he would like to share with the committee." (*Id.* ¶ 128.) Dean Chen further informed Plaintiff that he could prepare to ask questions at the hearing of any individuals who were interviewed. (*Id.*) Plaintiff submitted a supplemental statement as well as materials related to Student X. (*Id.* ¶ 131.)

5. Disciplinary Hearing

On November 6, 2023, the Committee—a panel of two faculty members, three students, and Dean Chen—held a hearing on the charges against Plaintiff. (*Id.* ¶ 162.) Plaintiff was

---

[6] Subsection 1.2.5(5) of the Code provides that certain "actions that threaten or endanger in any way the personal safety or security of others will be regarded as serious offenses," including, "[a]ny physical assault committed in the course of any University function or activity, or on the premises of the University or in the local vicinity, especially when unprovoked and/or when injury results." (Code at 37–38.)

[7] Subsection 2.2.9(2)(d) provides that a violation occurs "when alcohol is served, provided, or made available by or to persons under the age of 21. Violations involving juveniles, such as high school applicants or visitors to the University, will be deemed particularly serious." (*Id.* at 46.) Under the Code, consequences for violating the Alcohol Policy include suspension. (*Id.*)

accompanied by a student adviser. (*Id.* ¶ 128.) The hearing panel asked Plaintiff a series of questions about the incidents and the following four students testified: Student 4 (testified as a witness to the incident between Jane and Plaintiff); Student 6 (testified that Jane had a raspy voice when he saw her after the incident); Student 7 (testified that Sarah told her Plaintiff choked her); and Sarah (testified about Plaintiff's character). (*Id.* ¶¶ 181–182, 190, 192.) Jane was not present at the hearing and did not testify. (*Id.* ¶162.)

On November 8, 2023, the Committee issued its formal decision via a letter in which it found Plaintiff responsible for two violations of the Code's Personal Safety Policy and one violation of the Code's Alcohol Policy. (*Id.* ¶ 195.) As a result of these determinations, the University suspended Plaintiff for two years. (*Id.* ¶ 203.)

      6.    <u>Internal Appeal</u>

Plaintiff appealed the Committee's decision, arguing that the investigator "treated male and female witnesses differently during the investigation" and that he was not offered the chance to "respond to the statements the complainants had made in their interviews." (*Id.* ¶ 209.) On December 20, 2023, the review panel upheld Plaintiff's two-year suspension. (*Id.* ¶ 217.)

**B.    PROCEDURAL HISTORY**

On June 20, 2024, Plaintiff filed a four-count Complaint against Defendant, alleging: breach of contract (Count One) (*id.* ¶¶ 230–251); breach of the implied covenant of good faith and fair dealing (Count Two) (*id.* ¶¶ 242–251); gender discrimination, in violation of Title IX, 20 U.S.C. § 1681(a) (Count Three) (*id.* ¶¶ 252–258); and gross negligence (Count Four) (*id.* ¶¶ 259–265). The crux of the Complaint alleges that Defendant's decision to sanction Plaintiff was erroneous. (*See generally* Compl.)

In lieu of an answer, Defendant now moves to dismiss the Complaint pursuant to Rule 12(b)(6), contending that the Complaint has not plausibly alleged that it violated its own policy in

its investigation or demonstrated that sex was a motivating factor in its decision to discipline Plaintiff. (Moving Br. 9–21.)

## II. SUBJECT MATTER JURISDICTION

The Court has subject-matter jurisdiction over Plaintiff's federal claim under 28 U.S.C. § 1331. This Court also has subject-matter jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.[8]

## III. LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. When considering a motion under Rule 12(b)(6), a district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me. *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556

---

[8] Plaintiff is a citizen of a State other than New Jersey (Compl. ¶ 18), and the University is a private university located in Princeton, New Jersey (*id.* ¶19).

7

U.S. at 663). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### IV. <u>DISCUSSION</u>

The Court begins its discussion of the Motion with Plaintiff's federal claim and then proceeds to the state law claims.

#### A. GENDER DISCRIMINATION UNDER TITLE IX (COUNT THREE)

Count Three of the Complaint alleges that the Committee's findings and the sanction imposed were the product of gender bias in violation of Title IX. (*Id.* ¶¶ 252–258.)

Title IX of the Education Amendment Act of 1972 states that "[n]o person . . . shall, on the basis of sex, be excluded, from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Among other things, it "bars the imposition of university discipline where sex is a motivating factor in the decision to discipline." *Doe v. Princeton Univ.*, 30 F.4th 335, 343 (3d Cir. 2022) (*Princeton III*) (quoting *Doe v. Univ. of Sciences.*, 961 F.3d 203, 209 (3d Cir. 2020)) (*USciences*). In *USciences*, the Third Circuit adopted a "straightforward pleading standard" for Title IX claims: "to state a claim under Title IX, the alleged facts, if true, must support a plausible inference that a federally-funded college or university discriminated against a person on the basis of sex." 961 F.3d at 209.

"A plaintiff must 'cast some articulable doubt on the accuracy of the disciplinary proceeding' and then show 'particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding.'" *Doe v. St. Joseph's Univ.*, 832 F. App'x 770, 773 (3d. Cir. 2020) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)). A plaintiff may make this

showing in various ways, including by alleging "procedural flaws in the investigatory and adjudicative process; noting errors or inconsistencies in the adjudicator's oral or written findings; or challenging the overall adequacy and reliability of the evidence." *Doe v. Coll. of New Jersey*, Civ. No. 22-3282, 2023 WL 281262, at *6 (D.N.J. April 6, 2023) (citing *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 584 (E.D. Va. 2018)). Generalized and conclusory allegations are insufficient to raise an inference of disparate treatment where a male plaintiff "alleged no facts reflecting that the disciplinary process and results for female victims are different from men." *Doe v. Princeton Univ.*, 790 F. App'x 379, 383 (3d Cir. 2019) (*Princeton II*) (affirming dismissal of Title IX claim because allegations that the plaintiff "would not have been subject to Princeton's discriminatory acts if he were a female victim," and that the university "does not believe male students can be victims," were insufficient to survive a motion to dismiss).

Plaintiff alleges that the University violated Title IX by discriminatorily investigating and adjudicating the reports against him. (Compl. ¶ 252–258.) In support of his Title IX claim, Plaintiff alleges that the University was pressured to respond deferentially to female accusers of assault, the University investigator and Committee were biased, the Committee used a conclusory and unsupported rationale to find Plaintiff responsible, and the sanction imposed was disproportionate to his violations. (*Id.* ¶ 256.) Plaintiff alleges that (1) the investigation was biased because he was questioned "more pointedly and confrontationally" than Jane or Sarah, (2) Jane and Sarah were found credible despite inconsistencies in their stories, (3) "exculpatory witnesses" were not pursued, (4) male witnesses were not asked questions about whether Jane had any bruising on her neck, and (5) female witness were pursued "on behalf of Jane and Sarah but not similarly situated male witnesses on behalf of [Plaintiff]." (*Id.*)

9

In its Motion, Defendant argues that the Complaint does not support an inference that it discriminated against Plaintiff based on sex and that, at most, Plaintiff has suggested that the University is biased in favor of complaining parties. (Moving Br. at 22, 26.) Defendant additionally argues that the allegations as to external pressure focus on the University's responses to claims of sexual misconduct and sexual assault and "this is not a sexual assault case." (*Id.* at 27.)

Here, the Court finds that the Complaint does not support a plausible inference of sex discrimination and thus does not give rise to a Title IX claim. Plaintiff fails to allege how the purported difference in his alleged treatment by the Committee is tied to gender. *See Verdu v. Trs. of Princeton Univ.*, Civ. No. 19-12484, 2020 WL 1502849, at *5 (D.N.J. March 30, 2020) ("Having considered Plaintiff's allegations, I cannot find that the Complaint supports a plausible inference that, *because of his gender*, Plaintiff was found to have violated the University's Sexual Misconduct Policy.").

Taking Plaintiff's allegations in turn—first, that he was questioned "more pointedly and confrontationally" than Sarah or Jane (Compl. ¶ 256)—the Court finds that such an allegation does not evince gender bias. Significantly, the Complaint alleges that Jane did not even testify at the hearing on November 6, 2023. (*Id.* ¶ 162.) The Court additionally finds that Plaintiff fails to connect how pointed or confrontational questions amounts to bias against men rather than an intent to thoroughly investigate two accusations of assault. "Indeed, courts have stressed that '[d]emonstrating that a university official is biased in favor of the alleged victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students.'" *Doe v. Rider Univ.*, Civ. No. 16-4882, 2018 WL 466225, at *10 (D.N.J. Jan. 17, 2018) (quoting *Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 778 (S.D. Ohio 2015)). Plaintiff's

allegations of differential treatment, at best, reflect a bias against alleged perpetrators and in favor of complainants and indicate nothing about gender discrimination. And where there are allegations of bias in favor of victims, without further allegations specifically regarding gender, courts have held these claims have failed to adequately plead a Title IX claim. *See Doe v. Princeton Univ.*, Civ. No. 22-5887, 2023 WL 8755232, at *9 (D.N.J. Dec. 19, 2023) ("[T]he Court is loathe to accept the assertion that the panel chose to believe [the complainant's] account over Plaintiff's as evidence of gender bias given the Supreme Court's admonition that 'courts should refrain from second-guessing the disciplinary decisions made by school administrators.'") (quoting *Davis ex rel. LaShonda D v. Monroe Cnty. Bd. of Educ.,* 526 U.S. 629, 648 (1999))).

Second, Plaintiff alleges that the Committee found Jane and Sarah credible despite "changes to their stories." (Compl. ¶ 256.) The Court finds again that these allegations do not demonstrate bias against Plaintiff on account of his status as a male student. *St. Joseph's Univ.*, 832 F. App'x at 774–75 (noting that the university panel's investigation, which failed to question the complainant's credibility or memory, may have been "shoddy," but did not give rise to gender bias where, like here, the "allegations" did not "relate to bias on account of sex") (quoting *Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir. 2016)). Like in *Doe v. St. Joseph's University*, none of Plaintiff's allegations about the investigation or adjudication support a plausible inference that the University discriminated against him based on sex. *See also Gendia v. Drexel Univ.*, Civ. No. 20-1104, 2020 WL 5258315, at *4 (E.D. Pa Sept. 2, 2020) (finding that the plaintiff did not connect a credibility determination or inclusion or exclusion of certain evidence against the plaintiff to gender).

To the extent that Plaintiff attempts to allege that the process was one-sided or irregular, the Complaint reveals that Plaintiff received notice of the charges filed against him (Compl. ¶ 126),

11

was given all the evidence collected (*id.*), had the opportunity to submit a statement and otherwise respond to the charges (*id.* ¶ 118, 131), and could identify witnesses as sources of potential favorable information to him to be interviewed (*id.* ¶ 122). Plaintiff was additionally afforded a hearing and the ability to confront one of his accusers (Sarah) as well as other witnesses. (*Id.* ¶ 128.) *Cf. Collick v. William Paterson Univ.*, Civ. No. 16-471, 2016 WL 6824374 (D.N.J. Nov. 17, 2016) (finding that the plaintiffs pled a Title IX claim where the alleged perpetrators were not given an opportunity to respond or explain themselves, did not receive proper notice of the charges, were not permitted to confront or cross examine their accuser, and no investigation was performed). Accordingly, Plaintiff's allegations of a flawed process are conclusory and otherwise do not give rise to an inference of gender bias. *See Rider Univ.*, 2018 WL 466225, at *9 ("[S]pecific allegations of procedurally flawed proceedings coupled with conclusory allegations of gender discrimination are not sufficient to survive a motion to dismiss."); *see also Yusuf*, 35 F.3d at 715 ("Allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome *combined* with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss. . . . A plaintiff must . . . also allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding.").

Lastly, Plaintiff references the 2011 Department of Education's Dear Colleague Letter ("2011 Letter"),[9] to suggest that the University was induced to discriminate against male students like Plaintiff who are accused of assault. (*See* Compl. ¶¶ 38, 39, 47–52, 256); *see also Princeton III*, 30 F.4th at 345 (explaining that the 2011 Letter "ushered in a more rigorous approach to

---

[9] As alleged, "[b]eginning in 2011, Princeton came under heavy pressure from the federal government to appear tough at all costs on claims of sexual assault, especially those brought by women against men. That pressure was exerted primarily through enforcement of a 'Dear Colleague Letter' . . . published by the Education Department's Office for Civil Rights (OCR) in April of that year, which concerned the ways schools were to enforce Title IX and address claims of sexual assault on their campuses." (Compl. ¶ 38.)

12

campus sexual misconduct allegations") (citations omitted). This allegation alone, however, cannot support a plausible claim of Title IX discrimination but "factors into the total mix of information." *USciences*, 961 F.3d at 210. It is further unclear how probative this allegation is in this case since Plaintiff was not charged with a violation of the University's Title IX policies on sexual misconduct or sexual assault.

Accordingly, the Court will dismiss Count Three without prejudice.

### B.      BREACH OF CONTRACT (COUNT ONE)

In Count One, Plaintiff asserts a breach of contract claim, alleging that he and the University were parties to a contract, which included the University's Code.[10] (Compl. ¶¶ 230–241.) Plaintiff alleges that the University breached its duty under the contract by failing to apply the clear and persuasive evidence standard when it found Plaintiff responsible for misconduct and in the denial of Plaintiff's appeal. (*Id.* ¶¶ 233–240.) Defendant argues in its Motion that the Committee and the appeals panel "follow[ed] its own established procedures" and required steps under the Code including use of the clear and persuasive standard and adherence to the Code's prescribed grounds for appeal. (Moving Br. at 10–13.) Defendant contends that Plaintiff's disagreement with the outcome does not amount to a claim for breach of contract. (*Id.* at 13.)

For contract claims relating to discipline of a student for misconduct, New Jersey courts have "warned against a rigid application of the law of contracts."[11] *Princeton III*, 30 F.4th at 346.

---

[10] Defendant contends that Plaintiff "fails to adequately plead exactly what the 'contract' is in this case" but nevertheless responds substantively to Plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims. (*See* Moving Br. at 18.) Given that the Third Circuit has construed a student handbook to bind universities and students and has entertained breach of contract claims in this context, the Court accepts that the relationship between Plaintiff and the University was contractual. *See USciences*, 961 F.3d at 211–12 (under Pennsylvania contract law); *Princeton III*, 30 F.4th at 346–48 (under New Jersey contract law); *see also Gendia*, 2020 WL 5258315, at *5 ("A student handbook may constitute a contract between a school and its students, and, where a handbook promises that Title IX claims will be investigated and adjudicated fairly, a school may breach its contractual duty towards its students by not investigating and adjudicating such claims fairly.") (citing *USciences*, 961 F.3d at 212).

[11] The parties do not dispute that New Jersey law applies.

(citations omitted). The role of the courts is therefore limited to determining whether the University "follow[ed] its own established procedures," and that those procedures were "fundamentally fair." *Id.* (citations omitted); *see also Princeton II*, 790 F. App'x at 385 ("[F]or contract claims relating to discipline for misconduct, courts will examine whether the 'institution violate[d] in some substantial way its rules and regulations.'") (quoting *Mittra v. Univ. of Med. & Dentistry of N.J.*, 719 A.2d 693, 698 (N.J. Super. Ct. App. Div. 1998)). Accepting the allegations in the Complaint as true, the Court finds that the Complaint does not sufficiently allege that the University failed to apply the clear and persuasive standard or that the denial of Plaintiff's appeal was unfair.

First, Plaintiff alleges that the Committee did not follow its own procedure when it failed to apply the clear and persuasive evidence standard. In support, Plaintiff contends that the Committee was "aware of a large amount of evidence that called Jane's and Sarah's credibility into question and undermined their claims." (Compl. ¶ 234.) Plaintiff alleges, for example, that Jane told the investigator that Plaintiff "grabbed my throat and lifted me off the ground" but said in a later interview that Plaintiff "did not squeeze the sides of my neck with his fingers." (*Id.* ¶ 147.) As for Sarah, Plaintiff alleges that Sarah claimed in her first interview that Plaintiff "had his hand on her throat and was using that hand to hold her in place" but in her second interview said that Plaintiff was "pushing" her neck. (*Id.* ¶ 158.) According to Plaintiff, Jane's and Sarah's stories were inconsistent, and thus the evidence before the Committee was not clear or persuasive.

The Court finds that the Complaint does not sufficiently allege that the Committee failed to apply the clear and persuasive standard. In fact, the Complaint makes clear that the Committee had a large amount of evidence before it, including Plaintiff's statement and supplemental statement, a letter from Student X as to his defamation claim against Jane, interviews of Plaintiff,

14

Jane, Sarah, and multiple witnesses including men and women, and the testimonies given at the hearing.  The Complaint demonstrates that the Committee made credibility determinations based on the evidence before it.  "The fact that the University did not reach the conclusion Plaintiff desired is not a breach of contract especially since the University followed its procedures as outlined in the [Code]."  *Doe v. Princeton Univ.*, Civ. No. 17-1614, 2018 WL 2396685 (D.N.J. May 24, 2018), *aff'd*, 790 F. App'x 379 (3d Cir. 2019) (dismissing a breach of contract claim that alleged a violation of the Code where Princeton investigated, made factual findings, and provided a remedy).  Moreover, the University held a live hearing on the charges against Plaintiff and Plaintiff had the opportunity to question any individual at the hearing who was interviewed.  (Compl. ¶¶ 120, 128.)  *See USciences*, 961 F.3d at 2015 (holding that, in the context of Title IX sexual-misconduct proceedings, "fairness" requires a "real, meaningful hearing" and "the opportunity for cross-examination of witnesses").  In short, the allegations do not adequately allege that the Committee failed to find the evidence before it clear and persuasive.  Thus, the Court finds that the Complaint does not sufficiently allege that the University did not "follow its own established procedures," or that the procedure was unfair.

Second, the Complaint, moreover, does not reveal that the University breached its contract with Plaintiff by not reversing the Committee's decision on appeal.  As outlined by the Code, there are three distinct grounds for appeal: 1) the procedures have not been fair and reasonable; 2) substantial relevant information exists that was not, and could not have been, presented to the Committee; and 3) the imposed penalty does not fall within the range of penalties imposed for similar conduct.  (Code at 52 subsection 2.5.2.)  In support of this claim, Plaintiff asserts that the investigatory procedure was unfair, and the Committee failed to pursue relevant testimony.  (Compl. ¶ 239.)  The Court finds, however, that the information Plaintiff claims the Committee

failed to pursue—testimony from Student X—was due to Plaintiff's own failure to submit Student X to be interviewed. (Compl. ¶¶ 122, 125, 128.) Additionally, as explained above, the Court finds that the Complaint does not sufficiently allege that the investigation or procedure was unfair or not in accordance with the Code. Therefore, the appeals panel was not in breach for rejecting an appeal on fairness grounds.

In sum, Plaintiff has not alleged facts sufficient to demonstrate that the University breached the Code in its disciplinary process or in consideration of his appeal. The Court will therefore dismiss Count One without prejudice.

### C. BREACH OF GOOD FAITH AND FAIR DEALING (COUNT TWO)

In Count Two, Plaintiff asserts a claim for breach of the implied covenant of good faith and fair dealing, arguing that the University failed to conduct a fair investigation, hearing, or provide a meaningful rationale for its decision to suspend Plaintiff. (Compl. ¶¶ 242–251.) In its Motion, Defendant argues that Plaintiff fails to adequately allege that it acted with "bad faith" or had a "malicious motive", and Plaintiff is simply "repackaging" his breach of contract claim. (Moving Br. at 18.)

"In New Jersey, '[e]very contract contains an implied covenant of good faith and fair dealing.'" *Princeton III*, 30 F.4th at 348 (quoting *Wade v. Kessler Inst.*, 798 A.2d 1251, 1259 (N.J. 2002)). The implied covenant requires both parties to a contract to act in "good faith . . . [by] adher[ing] to community standards of decency, fairness, or reasonableness." *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 722 (N.J. 2007) (citations and quotation marks omitted); *see Kenny v. Onward Search*, Civ. No. 15-456, 2015 WL 1799593, at *3 (D.N.J. Apr. 15, 2015) ("[A] contract[] include[s] an implied covenant that the parties to the contract will act in good faith."). As such,

"the covenant 'allow[s] redress for the bad faith performance of an agreement.'" *Princeton III*, F.4th at 348.

In *Princeton III*, the Third Circuit held that the plaintiff adequately pled a breach of good faith and fair dealing claim where the complaint alleged that Princeton "[s]ubjected [the plaintiff] to a discriminatory disciplinary process, [d]isregard[ed] exculpatory evidence for [the plaintiff] and incriminating evidence against [the complainant], constru[ed] all discrepancies and inconsistencies in [the complainant's] favor, and ignor[ed] evidence corroborative of [plaintiff's] counter claims." *Id.* (internal quotations omitted). The Third Circuit further found that although this claim and the breach of contract claim, "share[d] some events and circumstances," the facts were not "redundant of one another." *Id.* (internal quotations and citations omitted). The Circuit Court, thus, allowed both claims to proceed. *Id.*; *see also Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 463 (D.N.J. 2020) ("The plaintiff cannot maintain a breach of the implied covenant of good faith and fair dealing claim that is duplicative of its breach of contract claim."); *Ohm Systems, Inc. v. Senergene Sols., LLC*, Civ. No. 23-1340, 2023 WL 8437279, at *3 (D.N.J. Dec. 5, 2023) (dismissing breach of good faith and fair dealing claim where "Plaintiff [did] not plead any additional facts to distinguish the claim from its breach of contract claim").

Here, Plaintiff's breach of the implied covenant of good faith and fair dealing claim is not duplicative of its breach of contract claim but the Court finds that it is nevertheless not adequately pled. Plaintiff contends primarily that the University breached the covenant of good faith and fair dealing for its failure to conduct a fair investigation or hearing and to provide a "meaningful rationale." (Compl. ¶¶ 244, 246, 248.) As for failure to conduct a fair investigation or hearing, the Court has already determined that the Complaint does not plausibly allege unfairness in the disciplinary process or procedure. Moreover, as to the failure to provide a meaningful rationale,

17

although the Complaint alleges that the Committee's rationale and imposition of a two-year suspension was deficient, the Complaint does not plausibly allege that the Committee acted in bad faith or with malice toward Plaintiff. Accordingly, the Court will dismiss Count Two without prejudice.

### D. GROSS NEGLIGENCE (COUNT FOUR)

Finally, Count Four alleges gross negligence. (Compl. ¶¶ 259–265.) Defendant argues that universities owe no duty of care to students when carrying out disciplinary procedures and Plaintiff's gross negligence claim must be dismissed with prejudice. (Moving Br. at 29.) Notably, Plaintiff has not set forth any authority on whether a private university or its employees owe a certain duty of care to its students under New Jersey law in carrying out disciplinary procedures. The Court has identified at least one decision from this district that has declined to find such a duty exists. *See Donohue v. Capella Univ.*, Civ. No. 22-5634, 2023 WL 5425503, at *7 (D.N.J. Aug. 22, 2023). As in *Donohue*, Plaintiff here cites the University's alleged failure to act fairly in its investigation and adjudication of the charges against him as a basis for its negligence claim. "Plaintiff, however, cannot convert claims sounding in breach of contract to negligence claims simply by contending that failure to abide by contractual terms amounts to a breach of a legal duty." *Id.*

Plaintiff fails to cite, and the Court has not identified, any legal authority indicating what duty of care is owed to students in disciplinary proceedings. Nor does Plaintiff otherwise assert allegations that are not subsumed by his contract-related claims. Accordingly, Plaintiff's gross negligence claim will be dismissed without prejudice. *See Minella v. Electron Microscopy Scis.*, Civ. No. 21-15906, 2022 WL 4300222, at *4 (D.N.J. Sept. 19, 2022) ("[Under New Jersey law,] a plaintiff is barred from asserting a tort claim arising from a contractual relationship unless the

18

breaching party owed a duty independent of the duties that arose under the contract. . . . '[M]ere failure to fulfill obligations encompassed by the parties' contract, including the implied duty of good faith and fair dealing, is not actionable in tort.'" (quoting *Perkins v. Washington Mut., FSB*, 655 F. Supp. 2d 463, 471 (D.N.J. 2009))).

## V.   CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendant's Motion, and the Complaint will be dismissed without prejudice. Plaintiff will be given leave to file a First Amended Complaint to address the deficiencies set forth in this Opinion within thirty (30) days from the date of the accompanying Order. An appropriate Order will follow.

Date: April 28, 2025

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
