DYNAMIS LLP

*Jamie Hoxie Solano, Esq.*

**October 13, 2026**

**VIA ECF**
The Honorable Zahid Quraishi
U.S. District Court, District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

**Re: John Doe v. Princeton University, Case No. 3:24-cv-07125-ZNQ-TJB, Request For Leave to File Partial Motion for Summary Judgment and to Stay Discovery Pending Motion**

Dear Judge Quraishi:

Consistent with Your Honor's Judicial Preferences, the undersigned submits this letter on John Doe's ("John's") behalf to respectfully request leave to file a motion for partial summary judgment to resolve John's breach of contract claim prior to the parties engaging in lengthy discovery that may be unnecessary. As explained in John's August 21 letter (ECF No. 29),[1] the case following remand from the Third Circuit is unusual because nearly all of the allegations that the Third Circuit said would establish a breach of contract are undisputed and rely on documents in both parties' possession.

John's primary claim before this Court is a breach of contract claim. John seeks leave to file a summary judgment motion on his breach of contract claim based on the allegations proved by documents both parties already possess. Rather than have John engage in the delay and expense of significant discovery on all of the claims at issue—including a broad Title IX claim—discovery could be eliminated for this claim entirely or, at the very least, significantly limited to those discrete areas that Princeton identifies pursuant to Fed. R. Civ. P. 56(d). If John's motion is successful, it would very likely lead to a global resolution of this entire matter; at minimum, it would significantly reduce the amount of discovery needed. John has been damaged and continues to be damaged by Princeton's wrongful disciplinary action and seeks speedy resolution of this claim to mitigate further damages. To preserve the parties' and the Court's resources, John also requests that discovery for his other claims be stayed pending the motion's resolution.

John's primary contract claim is that Princeton failed to weigh the evidence in his case by the "clear and persuasive" evidence standard it promised. ECF No. 1 ¶¶ 233-37. In the Third Circuit's opinion in *John Doe v. Princeton University*, 184 F.4th 193 (3d Cir. 2026) (hereafter "*Princeton IV*"), the Court identified several allegations that, if proven, would "easily" suffice to show breach of a much *lower* evidentiary standard—

[1] Given Princeton's stated lack of interest in mediation (*see* ECF No. 29 at 1), John no longer believes it would be a fruitful use of resources to pursue it and thus formally withdraws that request.

preponderance of the evidence—"let alone the 'clear and persuasive' standard applicable here." *Id.* at 210. There are eight items that *Princeton IV* said would "easily" show a breach of the applicable standard. Six of them have already been established by materials in both parties' possession:

1. Princeton "disregarded testimony from Student 5 and Student X by failing to seek it out." *Id.* at 211. **Provable from:** The investigative file and hearing transcript, which shows these students were neither interviewed nor called to testify at the hearing.

2. Princeton "ignored evidence showing Jane had falsely accused Student X of choking her." *Id.* **Provable from:** The invesetigative file, which shows Mr. Doe requesting testimony from Student X for this reason; and the Decision Letter, which makes no mention at all of this evidence, even though it was part of the investigative file.

3. Princeton "failed to account for Jane's statement to John that she would lie about those accusations if Student X sought to hold her accountable." *Id.* **Provable from:** The investigative file (which contained that evidence) and the Decision Letter (which makes no mention of it whatsoever).

4. "[T]he Committee's deliberation period was 'extremely limited'—occurring in the few waking hours between 11:30 p.m. on the night of the hearing and 10:00 a.m. the next morning." *Id.* **Provable from:** The hearing transcript and the documents shared with John by Princeton during the proceeding, which together establish that timeline.

5. "[T]he Committee's hostile and extended questioning of John and Student 4, while treating 'witnesses supporting the complainants with kid gloves, if not total disinterest.'" *Id.* **Provable from:** The video and transcript of the hearing, which memorialize the Committee's treatment of the various witnesses.

6. "[T]he Committee's failures to challenge Jane and Sarah's inconsistent narratives of the alleged assaults, their reports to friends in the aftermath, and their time spent with John after the alleged assaults—followed by its explicit statement in its decision letter that it relied on 'the women's continued and consistent descriptions of the incidents in communications and conversations with others.'" *Id.* **Provable from:** the investigative file, hearing transcript, and Decision. Letter, which together show:

    - That Jane and Sarah told inconsistent stories about being choked, but were never asked about that during either the investigation or the hearing.

    - That Jane told inconsistent stories about whether Sarah witnessed her alleged choking, but was never asked about that during either the investigaton or the hearing.

    - That Sarah told inconsistent stories about whether Jane had bruising on her neck, but was never asked about that during either the investigaton or the hearing.

- That Sarah failed to tell friends afterwards that John had choked her, but only that he had yelled at her, yet was never asked about that during either the investigaton or the hearing.

- That Jane and Sarah provably (via photos submitted as evidence) spent time alone with John in the months after the alleged assaults—including at his family home, a full month *after* the date that Jane claimed she cut off all contact with him.

- That, despite all of those inconsistencies and contradictions, the Committee's Decision Letter deemed the testimony of Jane and Sarah "consistent" without any explanation or elaboration.

Only two of the eight items identified by the Court would require discovery, and, in the event the Court permits him leave to file this proposed motion for summary judgment, John does not intend to rely on them in his motion for partial summary judgment:

7. That Princeton "overlooked th[e] testimony" of Student 4—"the only eyewitness to the interaction between John and Jane"—"when finding John responsible for the alleged assaults." *Id.*

8. That "a source who was involved in the [Committee's] deliberative process said the [Committee] had prejudged guilt." *Id.*

Those are the allegations that the Third Circuit said would "easily" show breach of the lower "preponderance of the evidence" standard, and all but two of them are *already provable* from the case documents in both parties' possession. And that includes the most critical one—that the panel's primary rationale was that Jane and Sarah had been "consistent" when they provably were anything but. When the Third Circuit has already held that eight items "easily" prove breach of a *lower* standard, it follows that breach of six of those items—including the most fundamental—would amount to a breach of the *higher* standard at issue here.

Under these unique circumstances—where the Third Circuit has outlined what would constitute a breach of contract, where six of the items they outline are undisputed and do not require discovery, where the passage of time continues to damage Mr. Doe following a two-year suspension, and the parties' respective resources are vastly disparate (Princeton's reported endowment for the 2025 fiscal year was $36.4 billion)—Mr. Doe respectfully requests that the Court stay discovery until his motion for partial summary judgment is resolved, without further waste of the parties' and the Court's resources.

Respectfully submitted,

*/s/ Jamie Hoxie Solano*
Jamie Hoxie Solano
*Counsel to Plaintiff John Doe*